[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Catherine Kligerman, an attorney, appeals a decision of the defendant statewide grievance committee reprimanding the plaintiff, based on a complaint filed by Jean M. Vitale. The committee acted pursuant to Practice Book §§ 27J and 27M and General Statutes §§ 51-9Og and51-9Oh. The appeal is brought pursuant to Practice Book § 27N. See also, Pinsky v. Statewide Grievance Committee, 216 Conn. 228 (1990). The court finds the issues in favor of the plaintiff.
The facts essential to the court's decision are not in dispute and are fully reflected in the record. The plaintiff represented the complainant's husband, Daniel Krieger, in some post-judgment motions brought to this court, arising from a previous action dissolving the marriage between him and the complainant, Jean M. Vitale. Attorney Otto P. Witt represented the complainant in those motions.
On February 1, 1994, the complainant, Attorney Witt and the plaintiff appeared before Judge Santos of this court on a contempt motion filed by the plaintiff in behalf of her client. During the afternoon on that day, the plaintiff and Attorney Witt conferred with the judge in her chambers. Following that conference, the attorneys and Vitale remained in the courthouse attempting to reach an agreement on the issues raised in the plaintiff's motion that were before the court. They were unsuccessful.
On February 2, 1994, at some time after 2:00 P.M., the plaintiff appeared in court before Judge Santos. Neither Vitale nor Attorney Witt was present. Contending that Vitale's and Witt's attendance had been required, the plaintiff requested the court to issue a capias for Vitale and to set the bond at $1000.00. Judge Santos granted the request and issued the capias. The basis of the capias was the finding of the court, as stated therein, that Vitale "was duly summoned, ordered, subpoenaed or otherwise required by law to appear before CT Page 1806 this court on (February 2, 1994), and said person failed to appear."
On February 15, 1994, a motion filed by Attorney Witt in behalf of Vitale was scheduled by the court for hearing. The plaintiff duly appeared in court in behalf of her client; once again, however, neither Vitale nor Witt appeared.
At some point, the plaintiff delivered the capias to the sheriff for execution. On March 7, 1994, two sheriffs arrested Vitale, in accordance with the capias, and brought her to the courthouse. She posted the $1000.00 bond the same day and was released.
On March 8, 1994, Attorney Witt filed a motion to vacate the capias. In the motion, Attorney Witt asserted that "Judge Santos did not order the plaintiff or her counsel to appear on February 2, 1994." Attorney Witt also asserted in paragraph 9 of the motion that the plaintiff "deliberately mislead" him and the court by appearing in court on February 2 and seeking a capias. In paragraph 11 of the motion, Attorney Witt asserted that the plaintiff's "conduct brings discredit to the legal profession and should not be sanctioned by the court." The plaintiff filed an objection to the motion, taking specific exception to the cited paragraphs.
On March 30, 1994, the attorneys appeared before Judge Santos on Attorney Witt's motion to vacate the capias. The judge held, on the basis of her recollection of the February 1 chambers conference and contrary to Witt's assertions, that Witt and his client had been effectively ordered to return to court at 2:00 P.M. on February 2, 1994. Accordingly, the judge affirmed the issuance of the capias that she had ordered on that day and denied Witt's motion.
In denying the motion to vacate the capias, the judge also granted the plaintiff's request to strike from the motion paragraphs 9 and 11, which contained the allegations that the plaintiff had misled the court and Attorney Witt and that her conduct discredited the legal profession. CT Page 1807
On April 14, 1994, Vitale filed a complaint against the plaintiff with the statewide bar counsel. In her complaint, Vitale alleged that the plaintiff was guilty of misconduct in pursuing the capias that resulted in her arrest. After considering the claims of the parties, the local panel found probable cause to believe that the plaintiff had violated Rule 4.4 of the Rules of Professional Conduct "by seeking the issuance of a capias with the result that the complainant was ultimately arrested."
On November 2, 1994, a reviewing committee of the defendant statewide grievance committee conducted a hearing on Vitale's complaint. At the hearing, Vitale and the plaintiff testified. The reviewing committee also had in the record transcripts of the February 2, 1994, and March 30, 1994, hearings before Judge Santos; a copy of the capias issued by Judge Santos; and other court documents, correspondence, and briefs. Attorney Witt did not testify.
Following the hearing, the reviewing committee rendered a proposed decision, and this was subsequently adopted unchanged by the defendant committee as its final decision.
The committee determined that the plaintiff violated Rule 4.4. It based this determination on the following findings of fact:
 The Complainant's attorney (Witt) did not understand that he was supposed to report back to the court at 2 :00 p. m. on February 2, 1994. Therefore, the Complainant's attorney did not inform his client to appear in court on February 2, 1994. The (plaintiff) appeared in court on February 2, 1994. The (plaintiff) did not telephone (Witt) regarding his nonappearance. However, the (plaintiff) did request and obtain a capias from the court on the Complainant. More than a month later, the (plaintiff) had the Complainant arrested on the capias without any notice or further communication regarding this subject with the Complainant's attorney. CT Page 1808
Rule 4.4 provides, in relevant part, as follows:
 In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay or burden a third person. . . .
The plaintiff advances a number of arguments in support of her appeal, contending that the committee's decision is not supported by the evidence, that it misconstrues the meaning of Rule 4.4, and that the committee acted in abuse of its discretion.
An appeal from a decision of the committee to reprimand an attorney is limited to a review of the record and is not a de novo proceeding. Pinsky, supra, 234. Practice Book 27N(f) provides:
 (f) Upon appeal, the court shall not substitute its judgment for that of the statewide grievance committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1) In violation of constitutional, Practice Book or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion.
As indicated by the above provision of the Practice Book, the scope of the court's review is very limited. Although an appeal of a decision of the committee is not governed by the specific provisions of the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., the practice book provisions are so similar to the provisions of General Statutes § 4-183 of the UAPA that CT Page 1809 many of the same principles of law apply to appeals of the committee's decisions. "With regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. Connecticut Light PowerCompany v. DPUC, 219 Conn. 51, 57 (1991). However, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." United Parcel Service, Inc. v.Administrator, Unemployment Compensation Act, 209 Conn. 381,385 (1988).
The standard of proof applicable to the committee in determining whether an attorney has violated the Rules is clear and convincing evidence. Statewide GrievanceCommittee v. Presnick, 18 Conn. App. 475, 477 (1989). This standard applies to disciplining lawyers, regardless of the ultimate sanction imposed. Statewide GrievanceCommittee v. Presnick, 18 Conn. App. 316, 323 (1989). Thus, there must be clear and convincing evidence in the record to support the committee's finding of a rules violation by an attorney.
The court has reviewed the entire record in this case, including the transcript of the reviewing committee's hearing, the various documents submitted by the parties and, in particular, the transcripts of the proceedings before Judge Santos. The court has also, of course, studied the briefs of counsel. Based on this review, the court concludes that the committee's decision lacks any foundation in the facts or in the law.
First, the committee's decision appears to be based on a misreading of the meaning and intent of Rule 4.4. The rule is designed to prohibit a lawyer from using devices and strategies, which are legal in themselves, but which the lawyer employs for the sole purpose of harassing an opposing party or third person. The rule is CT Page 1810 not designed, however, to protect such persons from embarrassment or inconvenience in all events and regardless of the circumstances. The lawful actions of an attorney in behalf of his or her client during a lawsuit may often result in embarrassment or inconvenience to an opposing party or even to a third person. Rule 4.4 outlaws such actions only if the attorney engages in them for no other reason than to harass. If the actions have some substantial legitimate purpose, they are not prohibited even if they have the incidental effect of causing embarrassment or inconvenience.
In the context of this case, Rule 4.4 prohibited the plaintiff, in representing her client, from using the capias if it had "no substantial purpose other than to embarrass, delay or burden" Vitale. In order to find that the plaintiff violated this rule, therefore, the committee needed clear and convincing evidence that the plaintiff's request for a capias and delivery of that capias to a sheriff had no substantial purpose other than to injure Vitale. Put another way, if there was clear and convincing evidence that there was a substantiallegitimate purpose for using the capias, then the committee could not find that the plaintiff violated the Rule. This would be so even if the use of the capias had the incidental effect of embarrassing, delaying or burdening Vitale.
A capias is an order of the court compelling the attendance of a party or a witness in a court proceeding. The court has the discretion to issue a capias or to decline to do so. The order directs a "proper officer" — that is, a sheriff — to arrest the person and bring him or her to the court. The judge may indicate that certain conditions apply; for example, that the sheriff execute the capias only during certain hours of the day and specifying what the person may do in order to be released in the absence of the judge. In assessing the propriety of the judge's order, "great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness." DiPalma v.Wiesen, 163 Conn. 293, 298 (1972).
The obvious, undeniable and overwhelming evidence in this case that the plaintiff's actions in regard to the CT Page 1811 capias had a substantial legitimate purpose, other than to harass Vitale, was that a judge issued the capias with full awareness of all of the relevant facts and subsequently affirmed her order after it was executed. Furthermore, that judge specifically held that the plaintiff acted properly in requesting the capias, that she did not mislead the court, and that her actions did not bring any discredit to the legal profession. In effect, the judge's order conclusively established that there was a substantial legitimate purpose of the capias, which was to obtain the presence of Vitale in the courthouse. In order to find that the plaintiff's actions had no such purpose, therefore, the committee would have had to find, by clear and convincing evidence, that the judge acted either in ignorance of the facts or arbitrarily and in total abuse of her discretion. There was no such finding, of course.
A major factor in the committee's decision seems to be its theory that the plaintiff had some obligation to forewarn Attorney Witt that she intended to deliver the capias to a sheriff for execution. The committee did not, however, indicate any legal authority in support of this theory and was unable to supply this court with any such authority in its brief or at oral argument. The reason for this void is clear: there is no such obligation. Indeed, in many cases, a warning would serve only to make execution of the capias more difficult and would thus tend to thwart the court's order.
Another factor in the committee's decision seems to be its view that the plaintiff did something wrong in the timing of the delivery of the capias to the sheriff; that is, "holding it for approximately one month." Putting aside the lack of evidence in the record that the plaintiff did hold the capias that long, the committee's argument in this regard is not readily comprehensible. Would the plaintiff's actions have been less grievous if she had delivered the capias to the sheriff a week earlier? Two weeks earlier?
The committee argues that the fact that the capias was not handed over for execution immediately after issuance allows the reasonable inference that the plaintiff did not seriously desire Vitale's attendance in CT Page 1812 court so much as she wished to harass her. The court notes, in this regard, that during the month between the court's issuance of the capias and the eventual execution by the sheriff, the complainant and her attorney once again, on February 15, 1994, failed to attend a scheduled court proceeding. The plaintiff testified at the hearing before the reviewing committee that she delivered the capias to the sheriff at that point, holding onto it until then in the hope that it would not be needed.
While it is not the court's role to., substitute its judgment on the facts for that of the committee, the committee is not free to make findings of fact, including inferences, that are not supported by evidence in the record. The committee's conclusion that the timing of the execution of the capias was somehow indicative of a lack of legitimate purpose in the plaintiff's obtaining it has no support in the evidence in the record.
The cases cited by the committee in its brief do not support its decision. They all involved independent actions by attorneys that had no court authorization. The crucial distinguishing factor between those cases and the present case is that the plaintiff here obtained the court's approval of the action both before and after performing it. And the court's subsequent approval of the way the plaintiff handled her role in the execution of the capias was given with full knowledge of all of the relevant facts, including those facts that the committee finds to be so damning against the plaintiff.
In summary, the court finds that there was no justification in the law or in the facts for holding that the plaintiff violated Rule 4.4. Accordingly, the appeal is sustained. The case is remanded to the committee, and the committee is instructed to vacate its reprimand of the plaintiff.
MALONEY, J.